# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| MARQUETTE BUIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-1157 |
| ) | |
| HEIDI LOCK, ) | |
| ) | |
| Defendant. ) | |

## OPINION

This cause is before the Court for consideration of Defendant Heidi Lock's ("Defendant") Motion for Summary Judgment (ECF No. 39). Plaintiff Marquette Buie ("Plaintiff"), proceeding *pro se*, filed his lawsuit against Defendant, a nurse at the Pontiac Correctional Center, in accordance with 42 U.S.C. § 1983 alleging a violation of constitutional rights. (ECF No. 1 at 1). For the reasons stated below, Defendant's Motion for Summary Judgment (ECF No. 39) is GRANTED.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A material fact is one that might affect the outcome of the suit. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to

1

show there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 588. Any disputed issues of fact are resolved against the moving party. *GE v. Joiner*, 552 U.S. 136, 143 (1997). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp.*, 477 U.S. at 323. Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Id*. at 324. Where a proposed statement of fact is supported by the record and not adequately rebutted, a court will accept that statement as true for purposes of summary judgment; an adequate rebuttal requires a citation to specific support in the record. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998). This Court must then determine whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

## FACTS

The following facts are undisputed material facts, unless otherwise noted. On April 8, 2013, Plaintiff filed his Complaint with this Court. (ECF No. 1). At all relevant times, Plaintiff was incarcerated at Pontiac Correctional Center. (ECF No. 39 at 3, ECF No. 41-1 at 2). Defendant was employed as a registered nurse at Pontiac Correctional Center. (ECF No. 39 at 3, ECF No. 41-1 at 3). Plaintiff claims Defendant was deliberately indifferent to Plaintiff's serious medical needs by failing to provide Plaintiff with his prescribed medication on September 21, 22,

and 23, 2012. *Id.* at 7. Plaintiff filed a grievance that was considered moot. (ECF No. 39-2 at 4).

A. **Illinois Department of Corrections Grievance Procedures**

Inmates incarcerated within the Illinois Department of Corrections ("the Department") may file grievances in accordance with Department Rule 504F: Grievance Procedures for Committed Persons. (ECF No. 39 at 3, ECF No. 41-1 at 3). The grievance procedures established by this rule are contained in the inmate handbooks provided to inmates upon arrival at correctional institutions and are contained in the Illinois Administrative Code. (ECF No. 39 3-4, ECF No. 41-1 at 3) (*See also* Ex. 1, Anderson Aff., ¶2). Under Department Rule 504F: Grievance Procedures for Committed Persons, generally, an inmate has sixty days to file a grievance from the date of discovery of the problem. (ECF No. 39 at 4, ECF No. 41-1 at 4). The inmate must first attempt to resolve grievances through his counselor. *Id.* 20 Ill. Admin. Code § 504.810(a).

If the grieved issue remains unresolved after such informal efforts, the inmate may submit a written grievance on a grievance form to the facility Grievance Officer designated by the Chief Administrative Officer ("CAO"). *Id.* The inmate's grievance must contain factual details regarding each aspect of the inmate's complaint, including what happened, when, where, and the name of each person who is the subject of the complaint. *Id.* An inmate who does not know the individual's identity may still file a grievance, but he or she must include as much descriptive information about the individual as possible. *Id.*

The Grievance Officer may personally interview the inmate and witnesses as deemed appropriate and obtain relevant documents to determine the merits of the inmate's grievance. *Id.* Upon completion of such investigation, the Grievance Officer's conclusions and recommended

relief, if appropriate, are forwarded to the CAO. *Id.* The CAO or the CAO's designee's decision is then submitted to the grieving inmate. *Id.* (*See also* Ex. 1, Anderson Aff., ¶3).

If, after receiving the CAO's decision, the inmate feels the issue is unresolved, he or she may appeal in writing to the Director of the Department by submitting the Grievance Officer's report and the CAO's decision within thirty days of that decision. (ECF No. 39 at 4, ECF No. 41-1 at 4-5). If a grievance is submitted to the Administrative Review Board ("ARB") without the Grievance Officer's report and the CAO's decision, the grievance is returned to the inmate with instructions that these responses must be submitted. (ECF No. 39 at 4, ECF No. 41-1 at 5) (*See also* Ex. 1, Anderson Aff., ¶4).

The ARB, as the Director's designee, reviews the appeal and first determines whether the inmate's grievance can be handled without the necessity of a hearing. (ECF No. 39 at 5, ECF No. 41-1 at 5). If so, the inmate is advised. *Id.* Other matters are scheduled for an ARB hearing involving an interview of the grieving inmate, examination of the relevant documents, and at the ARB's discretion, the calling of witnesses. *Id.* The ARB submits a written report of its findings and recommendation on the grievance to the Director or the Director's designee, who then reviews the report and makes a final determination on the grievance. *Id.* A copy of the ARB's report and the Director's final decision is sent to the inmate who filed the grievance. *Id.* The originals of these documents are maintained in the ARB's files. *Id.* Department Rule 504F: Grievance Procedures for Committed Persons provides no further means for review beyond this step. *Id.* (*See also* Ex. 1, Anderson Aff., ¶5).

Certain issues may be grieved directly to the ARB, rather than first through a counselor or Grievance Officer. (ECF No. 39 at 5, ECF No. 41-1 at 6). These issues include:

a. Decisions involving the involuntary administration of psychotropic medication;

b. Decisions regarding protective custody placement, including continued placement in or release from protective custody;

c. Decisions regarding disciplinary proceedings which were made at a facility other than the facility where the inmate is currently assigned; and

d. Other issues except personal property issues which pertain to a facility other than the facility where the inmate is currently assigned.

These grievances are then handled in accordance with the procedures described above. *Id.* (*See also* Ex. 1, Anderson Aff., ¶6). An inmate may request a grievance be handled on an emergency basis by forwarding the grievance directly to the CAO rather than to a counselor or Grievance Officer. (ECF No. 39 at 5, ECF No. 41-1 at 6). If the CAO determines there is a substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the grievance may be handled on an emergency basis. (ECF No. 39 at 5, ECF No. 41-1 at 7). If the complaint is determined not to be an emergency, the grievance is returned to the inmate with directions to follow the normal grievance procedure explained in the foregoing paragraphs. (ECF No. 39 at 5-6, ECF No. 41-1 at 7) (*See also* Ex. 1, Anderson Aff., ¶7).

The grievance procedure may not be utilized for complaints regarding decisions which are outside the Department's authority, such as parole decisions, clemency or orders regarding the length of sentences or decisions which have been reviewed by the Director. (ECF No. 39 at 6, ECF No. 41-1 at 7) (*See also* Ex. 1, Anderson Aff., ¶8). Defendant states when a grievance enters the ARB, it is stamped received and assigned to an ARB Chairperson for review. (ECF No. 39 at 6, ECF No. 41-1 at 9). According to Defendant, the grievance is reviewed to determine whether it was timely filed and meets all of the Department's grievance rules. *Id.* If these are not met, Defendant states the grievance is returned to the inmate with a memo indicating the grievance's deficiencies. (ECF No. 39 at 6, ECF No. 41-1 at 9-10). Defendant contends if all of these requirements are met, then the grievance is reviewed on its merits, and

the inmate is sent a letter detailing the ARB's decision. (ECF No. 39 at 6, ECF No. 41-1 at 10). Defendant states the ARB maintains a copy of all memos and letters it sends to inmates. *Id.* (*See also* Ex. 1, Anderson Aff., ¶9).

### B. Plaintiff's Grievance

Terri Anderson ("Anderson") is currently employed as the Manager of the Office of Inmate Issues and has held this position since November 1, 2004. (ECF No. 39 at 3, ECF No. 41-1 at 3). Prior to assuming this position, Anderson was a Chairperson for ARB in the Office of Inmate Issues within the Department and held this position since December 1997. (ECF No. 39 at 3, ECF No. 41-1 at 3). As an ARB Chairperson, Anderson's duties involve, among other things, reviewing and responding to grievances filed by Department inmates. *Id.* Anderson has a thorough knowledge of the operations and record keeping of the office. *Id.* (*See also* Ex. 1, Anderson Aff., ¶1). Defendant states Anderson performed a thorough search of ARB records to locate any grievances filed by Plaintiff concerning allegations that Defendant was deliberately indifferent to Plaintiff's serious medical needs by failing to provide Plaintiff his prescribed medication on September 21, 22, and 23, 2012. (ECF No. 39 at 6, ECF No. 41-1 at 10) (*See also* Ex. 1, Anderson Aff., ¶10).

On September 24, 2012, Plaintiff filed a grievance alleging Defendant had "not given his medication for three days." (ECF No. 39-2 at 1). The grievance further alleges "the nurse keeps walking past my door without asking me do I want my medicine" and "she has done this 3 times in a row, September 21, 22, and 23." *Id.* Plaintiff's September 24, 2012 grievance was received by his Grievance Officer on October 4, 2012, and reviewed on October 30, 2012. *Id.* at 3. The Grievance Officer denied Plaintiff's grievance as moot based on the response from the Health Care Unit Administrator, who explained "Plaintiff's medication order had expired and had to be

6

re-written, therefore resulting in a delay before it could be refilled by the Pharmacy." *Id*. The CAO concurred on October 31, 2012, and Plaintiff appealed the decision to the ARB, with the ARB receiving the appeal on November 15, 2012. *Id.* at 4. The ARB issued its final response on September 13, 2013, denying Plaintiff's grievance as moot. *Id.* The ARB's denial was likewise based on the Health Care Unit Administrator's response. *Id.* (*See also* Ex. 1, Anderson Aff., ¶13).[1]

Defendant states no other grievances relating to Plaintiff's allegation that he was not given his prescribed medication for three days (September 21, 22, and 23, 2012) were received by the ARB. (ECF No. 39 at 7) (*See also* Ex. 1, Anderson Aff., ¶14). Plaintiff argues this fact is immaterial because no other grievances were required. (ECF No. 41-1 at 11-12).

In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff alleges two additional material facts. (ECF No. 41-1 at 13). First, Plaintiff alleges the ARB issued its final response to Plaintiff's grievance outside of the six month recommended time frame set forth in Ill. Adm. Code § 504.850(f). *Id.* Second, Plaintiff alleges Defendant "waived her affirmative defense" by failing to file a Motion for Summary Judgment on the issue of exhaustion before August 20, 2013. *Id.* In Defendant's Reply (ECF No. 42), Defendant disputes Plaintiff's additional material facts.

## DISCUSSION

This matter is now before the Court on a Motion for Summary Judgment by Defendant Lock. For the reasons set forth, Defendant's Motion is granted. In Defendant's Motion for

---

[1] Plaintiff disputes the facts in this paragraph in his Response (ECF No. 41-1) to Defendant's Motion for Summary Judgment. He includes the facts in this paragraph in a section titled "Undisputed Materials Facts" and in a section titled "Disputed Material Facts." The Court considers these facts as undisputed material facts because Exhibit 2, attached to Defendant's Motion for Summary Judgment, includes a copy of Plaintiff's grievance, a copy of the grievance officer's report, and a copy of a document signed by the Director declaring Plaintiff's grievance moot. (ECF No. 39-2 at 1-4). Plaintiff does not dispute the authenticity of these documents in his Response. Therefore, these documents show the facts in this paragraph are not in dispute.

7

Summary Judgment, she argues inmates must exhaust all available administrative remedies prior to bringing any legal action. (ECF No. 39 at 7). Exhaustion requires the prisoner to not only file the appeal/grievance with the ARB but also to provide the ARB an opportunity to decide the appeal. *Id.* Defendant argues Plaintiff's filing of the initial lawsuit *prior* to the ARB rendering a decision is in derogation of the requirements of the prison grievance regulations in the Illinois Administrative Code, 20 Ill. Admin. Code § 504.810(b). *Id.* Defendant argues the Court should grant summary judgment in her favor because Plaintiff failed to complete the grievance process prior to filing suit. (ECF No. 39 at 10).

**A. Prison Litigation Reform Act and Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), governs a variety of procedural requirements related to inmate suits brought under 42 U.S.C. § 1983. (ECF No. 39 at 8). Under the PLRA, inmates must first exhaust all available administrative remedies prior to filing suit. Specifically, 42 U.S.C. § 1997e(a) states "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See also Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008).

The exhaustion requirement applies to all inmate suits relating to prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of administrative remedies is a condition precedent to filing suit. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). A plaintiff's suit must be dismissed if administrative remedies are not fully and properly exhausted. *Woodford v. Nqo*, 126 S. Ct. 2378, 2383 (2006) (holding that prisoner cannot satisfy exhaustion requirement by filing untimely or otherwise procedurally defective grievances). To meet the exhaustion requirement, prisoners must follow the administrative steps established by the state.

8

*Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The exhaustion requirement of the PLRA is enforced "by dismissing a suit that begins too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending." *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); *Pavey*, 544 F.3d at 742 (remedy for failure to exhaust remedies is dismissal).

Illinois provides for administrative review of inmate complaints through an institutional grievance process, where the review progresses from a Counselor to a Grievance Officer to the CAO to the Director. 20 Ill. Admin. Code §§ 504.800, *et seq*. The first step involves speaking with a Counselor about the contested issue. *Id.* at 504.810(a). If this attempt is unable to occur, then the Plaintiff has the option to file a written complaint within sixty days after the discovery of the problem. *Id.* The written grievance should be addressed to the Grievance Officer, who then evaluates, and submits his or her recommendation to the CAO. *Id.* at 504.830(d). The CAO "shall advise the offender of the final decision in writing within two months after receipt of the written grievance, where reasonably feasible." *Id.* If this does not suffice, and the inmate is dissatisfied with the response, he or she can appeal to the Director through the ARB within thirty days after the date of the CAO's written decision. *Id.* at 504.850(a). The final step includes a review by the Director, who examines the findings and recommendations of the ARB and issues a final determination within six months after receiving the complaint, where reasonably feasible under the circumstances. *Id.* at 504.850(f). The response period begins to run on the date the appeal is received, not when it is sent by the inmate. *See Gregory v. Santos*, No. 07-669-JPG-CJP, 2010 WL 750047, at *6 (S.D. Ill. Jan. 19, 2010). Once the inmate receives the Director's decision, the grievance procedure is finished.

Mailing the appeal to the ARB before filing the lawsuit does not constitute exhaustion. *Brown v. Parker*, No. 08-659-JPG-CJP, 2010 WL 3780864, at *3 (S.D. Ill. April 12, 2010)

(*citing Pozo*, 286 F.3d at 1024)). "In the Illinois system, exhaustion requires that the prisoner file the appeal *and* give the appeal board an opportunity to decide the appeal." *Id.* In addition to following the procedural steps established by the state, inmates must follow state rules and regulations about the content of the grievance. *Jones v. Bock*, 549 U.S. 199, 219 (2007); *Riccardo v. Rausch*, 375 F.3d 521, 523 (2004). The Illinois prison exhaustion regulations provide:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code § 504.810(b); *Riccardo*, 375 F.3d at 524.

### B. Whether Plaintiff Failed to Complete the Grievance Process Prior to Filing Suit

In this case, Defendant argues a prisoner must exhaust administrative remedies prior to filing suit. (ECF No. 39 at 10). *See Porter*, 182 F.3d at 535, *Woodford*, 126 S. Ct. at 2832; *Pozo*, 286 F.3d at 1025. Plaintiff filed a grievance on September 24, 2012, that pertained to Plaintiff's alleged failure to receive his medication on September 21, 22, and 23, 2012. (ECF No. 39-2 at 1). Plaintiff's grievance officer reviewed and denied Plaintiff's grievance on October 30, 2012, based on medical information received from the Health Care Unit Administrator, and the CAO concurred on October 31, 2012. *Id.* at 3. While Plaintiff did appeal the denial of his grievance by the CAO to the ARB, the ARB, which received Plaintiff's grievance on November 15, 2012, did not issue its final decision prior to Plaintiff commencing the instant action. *Id.* at 4. Plaintiff filed this action on April 8, 2013, but the ARB's final response was not issued until September 13, 2013. *Id.* Defendant argues the exhaustion process

required Plaintiff to not only file the appeal/grievance with the ARB, but also to give the ARB an opportunity to make a decision.

On October 2, 2013, Plaintiff filed what he titled a "Notice of Exhaustion of Grievance Process" (ECF No. 36) with this Court. This "Notice" was filed more than six months following the filing of Plaintiff's instant lawsuit. Defendant argues that filing the Notice was Plaintiff's "attempt to circumvent the fact that he filed the instant lawsuit…" and shows that "Plaintiff did not exhaust his administrative remedies prior to filing suit." (ECF No. 39 at 10). Defendant admits that Ill. Admin. Code 504.850(f) includes timing guidelines for responding to grievances, but the language in section 504.850(f) also explicitly recognizes the six month guideline is not a strict deadline but merely a guideline to be used when reasonably feasible under the circumstances. *See* 504.850(f).

As to Plaintiff's assertion in his Response that summary judgment should be denied because the ARB did not issue its final response to Plaintiff's grievance within the six month time frame recommended in Ill. Admin. Code § 504.850(f), the Court finds that such argument has no merit because Plaintiff needed to wait at least six months before filing a law suit with this Court. For example, under Ill. Admin. Code § 504.850(f), Plaintiff would have needed to wait until May 15, 2013, to file a claim in this Court because the ARB received Plaintiff's grievance six months earlier on November 15, 2012. (ECF No. 39-2 at 4). Plaintiff filed his Complaint more than one month too soon on April 8, 2013. The Court finds Plaintiff filed the suit prior to the end of the six month guideline for the ARB to respond. Therefore, the Court grants Defendant's Motion for Summary Judgment.

**C. Whether Defendant "Waived her Affirmative Defense" by Failing to File a Motion for Summary Judgment on the Issue of Exhaustion before August 20, 2013**

Plaintiff argues in his Response that Defendant was required to file any dispositive motions on the issue of exhaustion on or before August 20, 2013. (ECF No. 41-1 at 13). By failing to file a motion on or before August 20, 2013, Plaintiff argues Defendant waived her affirmative defense. *Id.* Defendant does not dispute the Court may have set an August 20, 2013, deadline for dispositive motions on the issue of exhaustion in its initial case management order. (ECF No. 42 at 2). However, this order was entered prior to counsel for Defendant filing their appearances and before any responsive pleading was filed on Defendant's behalf. This Court entered a revised case management order on November 25, 2013 (ECF No. 35) extending the deadline for any dispositive motions on the issue of exhaustion until November 25, 2013, the day Defendant's Motion for Summary Judgment was filed. (ECF No. 35: "If Defendant plans to file a summary judgment motion on the exhaustion of administrative remedies, she must do so by November 25, 2013.") Therefore, the Court finds Plaintiff's argument that Defendant waived her affirmative defense to be meritless.

**IT IS THEREFORE ORDERED:**

> **1) Defendant's Motion for Summary Judgment is GRANTED (ECF No. 39). This case is dismissed without prejudice. Plaintiff may re-file his claim before the two-year statute of limitations expires. The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff. This case is terminated, with the parties to bear their own costs. All deadlines and settings on the court's calendar are vacated and all other pending motions are denied as moot.**
>
> **2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).**
>
> **3) If Plaintiff wishes to proceed *in forma pauperis* on appeal, his motion for leave to appeal *in forma pauperis* must identify the issues Plaintiff will present on appeal to**

**assist the Court in determining whether the appeal is taken in good faith.** *See* **Fed. R. App. P. 24(a)(1)(c);** *see also Celske v. Edwards***, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith.");** *Walker v. O'Brien***, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED this 11th day of August, 2014.

                                              /s/ Michael M. Mihm
                                              MICHAEL M. MIHM
                                        UNITED STATES DISTRICT JUDGE